Howard Marc Spector
TBA # 00785023
SPECTOR & JOHNSON, PLLC
12770 Coit Road, Suite 1100
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380
Hspector@spectorjohnson.com

COUNSEL FOR THE DEBTORS

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **RMR Operating, LLC, et al.,** | § | **CASE NO. 16-30988-11** |
| | § | **(Jointly Administered)** |
| **Debtors.** | § | |

| |
|---|
| Second Amended Joint Plan of Reorganization<br>Filed by the Debtors<br>Dated: June 22, 2018<br>Dallas, Texas |

The Debtors, as debtors-in-possession, propose this Second Amended Joint Plan of Reorganization under chapter 11 of the Bankruptcy Code.

### ARTICLE 1: DEFINITIONS AND INTERPRETATION

**1.1** *Definitions.*

The capitalized terms used herein shall have the respective meanings set forth below:

(a) "**Ad Valorem Taxing Authority**" shall mean any governmental entity entitled by law to assess taxes on property based upon the value of such property which taxes are secured by a statutory Lien to secure the payment of such taxes, penalties and interest accruing thereon.

(b) "**Administrative Claim**" shall mean a Claim entitled to priority under sections 503[b] and 507[a][2] of the Bankruptcy Code in the Chapter 11 Cases of the Debtors.

(c) "**Allowed**" when used with respect to any Claim, except for a Claim that is an Administrative Claim, shall mean [1] such Claim to the extent it is not a Contested Claim; [2] such Claim to the extent it may be set forth pursuant to any stipulation or agreement that has been approved by Final Order; [3] a Contested Claim, proof of which was filed timely with the Bankruptcy Court and [A] as to which no objection was filed by the Objection Deadline; or [B] as to which an objection is filed by the Objection Deadline, to the extent determined by Final Order to be a valid obligation of the Debtor against which the Claim is asserted; if, as, and when determined by Final Order to be a valid obligation of the Debtor against which the Claim is asserted.

(d)       "**Bankruptcy Code**" shall mean the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

(e)       "**Bankruptcy Court**" shall mean the Bankruptcy Court unit of the United States District Court for the Northern District of Texas, Dallas Division, or such other court having jurisdiction over the Chapter 11 Cases.

(f)       "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

(g)       "**Bar Date**" shall mean July 5. 2016, the deadline for the filings of proofs of claim to assert all Claims, other than the claims of governmental authorities.

(h)       "**Black Rock**" shall mean Black Rock Capital, Inc.

(i)       "**Black Rock Available Cash**" shall mean an amount of Cash equal to $75,000 to be allocated to pay holders of Allowed Class 4BR Claims.

(j)       "**Black Shale**" shall mean Black Shale Minerals, LLC.

(k)       "**Business Day**" shall mean any day on which commercial banks are open for business in Dallas, Texas.

(l)       "**Cash**" shall mean legal tender of the United States of America or short-term liquid investments that are readily convertible to known amounts of legal tender of the United States of America.

(m)       "**Chapter 11 Cases**" shall mean the cases of the Debtors commenced under chapter 11 of the Bankruptcy Code on the Petition Date.

(n)       "**Collateral**" shall mean any property of a Debtor subject to a valid, enforceable and non-avoidable Lien to secure the payment of a Claim.

(o)       "**Confirmation Date**" shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

(p)       "**Confirmation Hearing**" shall mean the date on which the Bankruptcy Court holds the hearing[s] on confirmation of the Plan.

(q)       "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming the Plan.

(r)       "**Contested**" when used with respect to a Claim, shall mean a Claim against a Debtor [1] that is listed in a Debtor's Schedules as disputed, contingent or unliquidated; [2] that is listed in a Debtor's Schedules as undisputed, liquidated and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; [3] that is not listed in a Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court and to which an objection has been or is filed on or prior to the Objection Deadline and such objection has not been resolved by Final Order or stipulation or agreement approved by Final Order; and [4] any Unclassified Claim of which the Debtors have received written notice prior to the deadline for submitting same under Section 5.1 of the Plan or otherwise, and which has not been resolved by Final Order or stipulation or agreement approved by Final Order. Notwithstanding the foregoing, after the Objection Deadline, only Claims to which an Objection has been filed shall be deemed Contested Claims.

(s)     "**Contested Claims Reserve**" shall mean the reserve accounts established pursuant to this Plan for funding Contested Claims if and to the extent that such Claims are ultimately Allowed by Final Order and which are to be held pending resolution of Contested Claims by the entry of a Final Order allowing or disallowing such Contested Claim[s].

(t)     "**Contracts**" shall mean all executory contracts and unexpired leases as such terms are used within Bankruptcy Code section 365 to which a Debtor was a party as of the Petition Date.

(u)     "**Cross Border**" shall mean Cross Border Resources, Inc.

(v)     "**Cure Payment**" shall be the monetary payments required pursuant to Bankruptcy Code section 365[b][1][A] to cure defaults under Contracts to which a Debtor is a party and which will be assumed pursuant to the Plan. Such Cure Payment shall be conclusively determined and set for each such Contract at the Confirmation Hearing.

(w)     "**Debtors**" shall mean Red Mountain, RMR, Black Rock and Cross Border.

(x)     "**Disallowed**," when used with respect to a Claim, shall mean a Claim that has been disallowed by Final Order.

(y)     "**Effective Date**" shall mean a Business Day selected by the Debtors which is at least fifteen [15] days but not more than thirty [30] days after the Confirmation Date.

(z)     "**Equity Interest**" shall mean any (i) stock or membership interest or other instrument evidencing an ownership interest in a Debtor, (ii) right in a Debtor represented by an "equity security," as defined on section 101[16] of the Bankruptcy Code, or (iii) and any option, warrant or right, contractual or otherwise, to acquire an interest or security described in (i) or (ii), whether or not transferable, that existed immediately prior to the Effective Date, including but not limited to redemption, conversion, exchange, voting, participation, dividend rights, and liquidation preferences. Equity Interests shall include, where applicable, Preferred Equity Interests.

(aa)    "**Estimated Amount**" shall mean the maximum amount at which the Bankruptcy Court or, where required by applicable law, a United States District Court, estimates any Claim [or class of Claims] against a Debtor which is contingent, unliquidated or disputed, including, for the purpose of: [a] distribution under § 502[c], Bankruptcy Code; or [b] determining the feasibility of this Plan pursuant to § 1129[a][11], Bankruptcy Code for purposes of its confirmation.

(bb)    "**Estimation Order**" means an Order of the Bankruptcy Court or, where required by applicable law, the District Court, that determines the Estimated Amount of any Claim [or class of Claims], against a Debtor for any of the purposes as provided in this Plan.

(cc)    "**Federal Judgment Rate**" shall mean the rate referenced in 28 U.S.C. § 1961 in effect on the Petition Date, compounded annually.

(dd)    "**Fee Application**" shall mean an application of a Professional Person under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Cases.

(ee)    "**Fee Claim**" shall mean a Claim of a Professional Person under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Cases.

(ff)    "**Final Order**" shall mean [1] an order of a court having jurisdiction over the subject matter and person which has been entered and as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending or [2] in the event that an appeal, writ of

certiorari, reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order.

(gg)   "**General Unsecured Claim**" shall mean any Claim against a Debtor that is not the claim of an Interest Burden Payee, a Priority Non-Tax Claim, a Secured Claim, a Class 5 Claim, or an Unclassified Claim.

(hh)   "**Intercompany Claim**" shall mean any Claim by a Debtor held by another Debtor.

(ii)   "**Interest Burden Payees**" shall mean the holder, pursuant to a written agreement, of a right to capture minerals in exchange for either a share of production or payments on account of a share of production; whether created before or after an oil and gas lease was entered into or which may exist in the absence of an oil and gas lease, including but not limited to overriding royalty interests, non-participating royalty interests, net profits interests, production payments, shut in royalties, working interests and unleased mineral interests.

(jj)   "**Lienholder**" shall mean the holder of a Lien.

(kk)   "**Mineral Owner**" shall mean a third party owner of mineral interests in oil, natural gas, and other minerals in place under a parcel of land that has entered into a written agreement with a Debtor to enter and capture oil, natural gas or other minerals through exploration, drilling, and production operations.

(ll)   "**Objection Deadline**" shall mean the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective holders of each of the Claims as provided in Section 9.1 of the Plan.

(mm)   "**Petition Date**" shall mean March 8, 2016.

(nn)   "**Plan**" or "**Plan of Reorganization**" shall mean this Second Amended Joint Plan of Reorganization, either in its present form or as it may hereafter be altered, amended or modified from time to time.

(oo)   "**Plan Funder**" shall mean Stone Street, Inc.

(pp)   "**Priority Non-Tax Claim**" shall mean a Claim of the kind specified in section 507[a][3], [4], [5], [6], [7], [9] or [10] of the Bankruptcy Code.

(qq)   "**Priority Tax Claim**" shall mean a Claim of a governmental unit of the kind specified in section 507[a][8] of the Bankruptcy Code, specifically including but not limited to claims for tax years ending on or before the Petition Date.

(rr)   "**Preferred Equity Interests**" shall mean the 10.0% Series A Cumulative Redeemable Preferred Stock in Red Mountain designated by the Red Mountain Board of Directors on November 13, 2015.

(ss)   "**Pro Rata**" shall mean

(i)   if used in reference to a distribution of property to holders of Allowed Claims, a proportionate Distribution so that with respect to a particular Allowed Claim in such Class or group of Claims, the ratio of (a) (i) the amount of property distributed on account of such Claim to (ii) the amount of such Claim, is the

same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims in such Class or group of Claims to (ii) the amount of all Allowed Claims in such Class or group of Claims; and

(ii)    if used in reference to holders of Equity Interests, a proportionate distribution so that with respect to a particular holder of an Equity Interest the ratio of (a)(i) the number of shares of Equity Interests held by a particular holder to (ii) the number of shares of New Red Mountain Equity distributed to such holder pursuant to the Plan, is the same as the ratio of (b)(i) the total number of shares of Equity Interests held by all holders in the same Class to (ii) the total number of shares of New Red Mountain Equity distributed to such Class pursuant to the Plan.

(tt)    "**Professional Person**" shall mean a person retained or to be compensated pursuant to section 327, 328, 330, 503[b][2] or 1103 of the Bankruptcy Code.

(uu)    "**Red Mountain**" shall mean Red Mountain Resources, Inc.

(vv)    "**Red Mountain Available Cash**" shall mean an amount of Cash equal to $100,000.00 to be allocated to pay holders of Allowed Class 4RD Claims.

(ww)    "**RMR**" shall mean RMR Operating, LLC.

(xx)    "**Reorganized Debtors**" shall mean the Debtors, as reorganized, on and after the Effective Date.

(yy)    "**Schedules**" shall mean the Schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such Schedules and statements have been or may be supplemented or amended.

(zz)    "**Secured Claim**" shall mean a Claim secured by a Lien on property of a Debtor, which Lien is valid, perfected and enforceable under applicable law, is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the Collateral that secures payment of such Claim.

(aaa)    "**Stock Election**" means a vote indicated on the Ballot of the Holder of a Class 4RR Claim affirmatively opting to receive Common Stock in Cross Border in lieu of a Cash distribution on account if such holder's Class 4RR Claim and Class 6RR Claim, in accordance with Section 4.1[f] of the Plan.

(bbb)    "**Tax Liens**" shall mean any statutory Liens securing any Allowed Secured Claims of any Ad Valorem Taxing Authority. Tax Liens shall in all events include Liens which secure the payment of 2010 and prior years' ad valorem taxes.

(ccc)    "**Unclassified Claim**" shall mean any Priority Tax Claim or Administrative Claim.

(ddd)    "**Unsecured Claim**" shall mean a Claim other than a Secured Claim.

Unless a different definition is given in the Plan, all capitalized terms used in the Plan shall have the same meaning as ascribed in such terms in section 101 of the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**1.2**    *Interpretation.*

Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of or exhibit to the Plan, as the same may be amended, waived or modified from time to time. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

### 1.3    *Reorganized Debtors.*

The Plan shall be liberally construed for the benefit of the Debtors and Reorganized Debtors regarding the interchangeableness of the term "*Debtors*" with the term "*Reorganized Debtors*" and other instances of the use "*Reorganized*."

**ARTICLE 2: CLASSIFICATION OF CLAIMS**

### 2.1    *Claims Classified.*

For purposes of organization and all confirmation matters, except as otherwise provided herein, all Claims [except for Administrative Claims and Priority Tax Claims] shall be classified as set forth in this Article 2 of the Plan.

### 2.2    *Administrative Claims and Priority Tax Claims.*

Administrative Claims and Priority Tax Claims against a Debtor shall not be classified for purposes receiving distributions under the Plan. Rather, all such Claims shall be treated separately as Unclassified Claims on the terms set forth in Article 5 of the Plan.

### 2.3    *Claims.*

With the exception of Unclassified Claims, the Plan classifies the Claims against the Debtors as follows:

| | | |
|---|---|---|
| [a] | Class 1RD: | Any Allowed Secured Claims of Ad Valorem Taxing Authorities against Red Mountain. |
| [b] | Class 1RR: | Any Allowed Secured Claims of Ad Valorem Taxing Authorities against RMR. |
| [c] | Class 1CB: | Any Allowed Secured Claims of Ad Valorem Taxing Authorities against Cross Border. |
| [d] | Class 1BR: | Any Allowed Secured Claims of Ad Valorem Taxing Authorities against Black Rock. |
| [e] | Class 2RD: | Any Allowed Claims of Interest Burden Payees against Red Mountain. |
| [f] | Class 2RR: | Any Allowed Claims of Interest Burden Payees against RMR. |
| [g] | Class 2CB: | Any Allowed Claims of Interest Burden Payees against Cross Border. |
| [h] | Class 2BR: | Any Allowed Claims of Interest Burden Payees against Black Rock. |
| [i] | Class 3RD[A]-[Z]: | Any Allowed Secured Claims not Otherwise Classified against Red Mountain. |
| [j] | Class 3RR[A]-[Z]: | Any Allowed Secured Claims not Otherwise Classified against RMR. |

| [k] | Class 3CB[A]-[Z]: | Any Allowed Secured Claims not Otherwise Classified against Cross Border. |
| [l] | Class 3BR[A]-[Z]: | Any Allowed Secured Claims not Otherwise Classified against Black Rock |
| [m] | Class 4RD: | All Allowed Priority Non-Tax Claims against Red Mountain. |
| [n] | Class 4RR: | All Allowed Priority Non-Tax Claims against RMR. |
| [o] | Class 4CB: | All Allowed Priority Non-Tax Claims against Cross Border. |
| [p] | Class 5: | All Claims of Black Shale. |
| [q] | Class 6RD: | Any Allowed General Unsecured Claims against Red Mountain. |
| [r] | Class 6RR: | Any Allowed General Unsecured Claims against RMR. |
| [s] | Class 6CB: | Any Allowed General Unsecured Claims against Cross Border. |
| [t] | Class 6BR: | Any Allowed General Unsecured Claims against Black Rock. |
| [u] | Class 7RR: | Allowed Equity Interests in RMR. |
| [v] | Class 7CB: | Allowed Equity Interests in Cross Border. |
| [w] | Class 7BR: | Allowed Equity Interests in Black Rock. |
| [x] | Class 7RD: | Allowed Equity Interests in Red Mountain. |
| [y] | Class 8: | Allowed Claims of Mineral Owners. |

### ARTICLE 3: IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS

**3.1** *Impaired Classes of Claims and Equity Interests.*

The following classes of Claims and Equity Interests are impaired: 1CB, 1BR, 1RD, 1RR, 4RR, 4CB, 6CB, 6BR, 6RD, 6RR, and 7RD. All other classes of Claims are unimpaired.

**3.2** *Impairment Controversies.*

If a controversy arises as to whether any Claim or any class of Claims is impaired under the Plan, the Bankruptcy Court shall, upon notice and a hearing, determine such controversy.

### ARTICLE 4 : PROVISIONS FOR TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS UNDER THE PLAN

**4.1** *Treatment of Classified Claims.*

The classes of Claims against the Debtors shall be treated under the Plan as follows:

    [a] *Classes 1RD, 1RR, 1CB and 1BR – Any Allowed Secured Claims of Ad Valorem Taxing Authorities.* On the later of the Effective Date or the day upon which a Contested Class 1RD, 1RR, 1CB or 1BR Claim becomes Allowed, in full and final satisfaction of its Allowed Secured Claim, each holder of an Allowed Secured Claim in Class 1RD, 1RR, 1CB or 1BR shall receive a Cash payment equal to such Allowed Secured Claim without penalties accruing after the Petition Date. For purposes of calculating the amount of a Class 1 Allowed Secured Claim, Claims in Class 1RD, 1RR, 1CB or 1BR shall bear interest from the Petition Date through the Effective Date at the rate provided under applicable non-bankruptcy law. In the event of an objection to a Claim in this Class, any payments made to the holder of such Claim on account of such Claim while the objection is pending shall be

applied to the undisputed amount of the Claim. Any Ad Valorem Taxing Authority shall retain its Liens to secure its Allowed Class 1RD, 1RR, 1CB or 1BR Claim until the Allowed Secured Claim is paid.

[b] *Classes 2RD, 2RR, 2CB and 2BR – Any Allowed Claims of Interest Burden Payees.* On the later of the Effective Date or the day upon which a Contested Class 2RD, 2RR, 2CB or 2BR Claim becomes Allowed, in full and final satisfaction of its Allowed Class 2RD, 2RR, 2CB or 2BR Claim, each holder of an Allowed Secured Claim in Class 2RD, 2RR, 2CB or 2BR shall receive a Cash payment equal to such Allowed Class 2RD, 2RR, 2CB or 2BR Claim, with interest as provided under applicable non-bankruptcy law. Notwithstanding any contractual provision or applicable law that entitles the holder of an Allowed Class 2RD, 2RR, 2CB or 2BR Claim to demand or receive accelerated payment of such claim after the occurrence of a default, unless an objection to this Plan is received demanding cure of a specified default, entry of the Confirmation Order shall:

[i] be deemed to cure any default that occurred before or after the Petition Date, other than a default of a kind specified in Bankruptcy Code Section 365 [b][2];

[ii] reinstate the maturity of such Allowed Class 2RD, 2RR, 2CB or 2BR Claim as such maturity existed before such default;

[iii] finally determine that no compensation is due the holder of such Allowed Class 2RD, 2RR, 2CB or 2BR Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, including but not limited to any attorney's fees or costs associated with enforcement of such Interest Burden Payee's Allowed Class 2RD, 2RR, 2CB or 2BR Claim; and

[iv] otherwise leave unaltered the legal, equitable, or contractual rights of such holder of such Allowed Class 2RD, 2RR, 2CB or 2BR Claim.

[c] *Class 3RD[A] through 3RD[Z], 3RR[A] through 3RR[Z], 3CB[A] through 3CB[Z], and 3BR[A] through 3BR[Z] – Any Allowed Secured Claims not Otherwise Classified.* On the later of the Effective Date or the day upon which a Contested Class 3RD, 3RR, 3CB or 3BR Claim becomes Allowed, in full and final satisfaction of its Allowed Class 3RD, 3RR, 3CB or 3BR Claim, each holder of an Allowed Class 3RD, 3RR, 3CB or 3BR Claim against a Debtor, shall receive, at the applicable Reorganized Debtor's option, either [i] a Cash payment in the amount of such holder's Allowed Class 3RD, 3RR, 3CB or 3BR Claim; [ii] payment pursuant to the pre-Petition Date agreements between such holder and such applicable Debtor and retention of its Liens to secure the payment of the Allowed Class 3RD, 3RR, 3CB or 3BR Claim, or [iii] the surrender to such holder of all Collateral securing such Allowed Class 3RD, 3RR, 3CB or 3BR Claim in accordance with *In re Sandy Ridge Development Corp*, 881 F.2d 1346 [5th Cir. 1989], in which case such Allowed Class 3RD, 3RR, 3CB or 3BR Claim shall be deemed paid in full and fully satisfied and any deficiency thereon shall be treated as a Class 6 General Unsecured Claim against the Debtor which is liable for the Allowed Class 3 Claim. For purposes of the Plan, each Allowed Class 3RD, 3RR, 3CB or 3BR Claim shall be deemed separately classified into a subclass by Debtor [*e.g.*, 3RD[A], 3RD[B], 3RR[A], 3RR[B], 3CB[A], 3CB[B], 3BR[A], 3BR[B]] and the election made above made be made independently as to each such subclass. In the event that a Reorganized Debtor elects to provide the treatment referenced under [ii] of this paragraph, and notwithstanding any contractual provision or applicable law that entitles the holder of an Allowed Class 3RD, 3RR, 3CB or 3BR Claim to demand or receive accelerated payment of such claim after the occurrence of a default, unless an objection to this Plan is received demanding cure of a specified default, entry of the Confirmation Order shall:

[i] be deemed to cure any default that occurred before or after the Petition Date, other than a default of a kind specified in Bankruptcy Code Section 365 [b][2];

[ii] reinstate the maturity of such Allowed Class 3RD, 3RR, 3CB or 3BR Claim as such maturity existed before such default;

[iii] finally determine that no compensation is due the holder of such Allowed Class 3RD, 3RR, 3CB or 3BR Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law including but not limited to any attorney's fees or costs associated with enforcement of such holder's Allowed Class 3RD, 3RR, 3CB or 3BR Claim; and

[iv] otherwise leave unaltered the legal, equitable, or contractual rights of such holder of such Allowed Class 3RD, 3RR, 3CB or 3BR Claim.

[d]    Notwithstanding the foregoing, the Reorganized Debtors and any holder of an Allowed Secured Claim may agree to any alternate treatment of such Secured Claim, which treatment shall include preservation of such holder's Lien; provided, however, that such treatment shall not provide a return to such holder of an amount having a present value in excess of the amount of such holder's Allowed Secured Claim. Each such agreement shall be presented to the Bankruptcy Court before or within 90 days after the Effective Date and shall not materially and adversely impact the treatment of any other creditor under the Plan.

[e]    *Class 4RD – Any Allowed Priority Non-Tax Claim Against Red Mountain.* On the later of the Effective Date or the day upon which a Contested Class 4RD Claim becomes Allowed, in full and final satisfaction of its Allowed Class 4RD Claim, each holder of an Allowed Claim in Class 4RD shall receive a Cash payment equal to such Allowed Class 4RD Claim.

[f]    *Class 4RR – Any Allowed Priority Non-Tax Claim Against RMR.* On the later of the Effective Date or the day upon which a Contested Class 4RR Claim becomes Allowed, in full and final satisfaction of its Allowed Class 4RR Claim, each holder of an Allowed Claim in Class 4RR shall receive at the option of the holder of the Allowed Class 4RR Claim either [i] a Cash payment equal to such Allowed Class 4RR Claim; or [ii] a Pro Rata Share of 5% of the Equity Interest in Cross Border calculated based upon the total Allowed amount of each holder of an Allowed Class 4CB Claim and Allowed Class 4RR Claim making the Stock Election. Any holder of an Allowed Class 4RR Claim making the Stock Election shall receive no distribution on such holder's Allowed Class 6RR Claim.

[g]    *Class 4CB – Any Allowed Priority Non-Tax Claim Against Cross Border.* On the later of the Effective Date or the day upon which a Contested Class 4CB Claim becomes Allowed, in full and final satisfaction of its Allowed Class 4CB Claim, each holder of an Allowed Claim in Class 4CB shall receive at the option of the holder of the Allowed Class 4CB Claim either [i] a Cash payment equal to such Allowed Class 4CB Claim; or [ii] a Pro Rata Share of 5% of the Equity Interest in Cross Border calculated based upon the total Allowed amount of each holder of an Allowed Class 4CB Claim and Allowed Class 4RR Claim making the Stock Election. Any holder of an Allowed Class 4CB Claim making the Stock Election shall receive no distribution on such holder's Allowed Class 6CB Claim.

[h]    *Classes 5– Any Allowed Claims of Black Shale.* Black Shale shall retain all rights under its agreements with the Debtors. Confirmation of the Plan shall

[i] be deemed to cure any default that occurred before or after the Petition Date, other than a default of a kind specified in Bankruptcy Code Section 365 [b][2];

[ii] reinstate the maturity of such Allowed Class 5 Claim as such maturity existed before such default;

[iii] finally determine that no compensation is due the holder of such Allowed Class 5 Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law including but not limited to any attorney's fees or costs associated with enforcement of such holder's Allowed Class 5 Claim; and

[iv] otherwise leave unaltered the legal, equitable, or contractual rights of such holder of such Allowed Class 5 Claim.

[i]     *Class 6RD – Any Allowed General Unsecured Claims against Red Mountain.* On the later of the Effective Date or the day upon which a Contested General Unsecured Claim in Class 6RD becomes Allowed, each holder of an Allowed General Unsecured Claim in Class 6RD shall receive, in full and final satisfaction of such Allowed Claim, a Cash payment equal to its Pro Rata Share of the Red Mountain Available Cash.

[j]     *Class 6RR – Any Allowed General Unsecured Claims against RMR.* Holders of Allowed Claims in Class 6RR shall receive no distribution on account of their Claims.

[k]     *Class 6CB – Any Allowed General Unsecured Claims against Cross Border.* On the later of the Effective Date or the day upon which a Contested General Unsecured Claim in Class 6CB becomes Allowed, each holder of an Allowed General Unsecured Claim in Class 6CB shall receive, in full and final satisfaction of such Allowed Claim, deferred quarterly Cash payments beginning one [1] year following the Effective Date and ending on the 11th anniversary of the Effective Date in an amount necessary to amortize such holder's Allowed Class 6CB Claim over a eleven [11] year period with interest at the Federal Judgment Rate.

[l]     *Class 6BR – Any Allowed General Unsecured Claims against Black Rock.* On the later of the Effective Date or the day upon which a Contested General Unsecured Claim in Class 6BR becomes Allowed, each holder of an Allowed General Unsecured Claim in Class 6BR shall receive, in full and final satisfaction of such Allowed Claim, a Cash payment in equal to its Pro Rata share of the Black Rock Available Cash.

[m]     *Class 8- Any Allowed Claims of Mineral Owners.* Mineral Owners shall retain all rights under their agreements with the Debtors.  Confirmation of the Plan shall

[i] be deemed to cure any default that occurred before or after the Petition Date, other than a default of a kind specified in Bankruptcy Code Section 365 [b][2];

[ii] reinstate the maturity of such Allowed Class 8 Claim as such maturity existed before such default;

[iii] finally determine that no compensation is due the holder of such Allowed Class 8 Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law including but not limited to any attorney's fees or costs associated with enforcement of such holder's Allowed Class 8 Claim; and

[iv] otherwise leave unaltered the legal, equitable, or contractual rights of such holder of such Allowed Class 8 Claim.

### 4.2     *Treatment of Equity in the Debtors.*

[a]     *Class 7RD – Equity Interests in Red Mountain.* The existing Equity Interests in Red Mountain will be extinguished.  Accordingly, holders of Class 7RD Equity Interests will not retain their

Equity Interests in Red Mountain. Red Mountain will be dissolved under applicable non-bankruptcy law.

      [b]     *Class 7RR – Equity Interests in RMR.*  All Equity Interests in RMR held by Red Mountain will be transferred to Cross Border.

      [c]     *Class 7CB – Equity Interests in Cross Border.*  5% of the Equity Interests in Cross Border held by Red Mountain will be transferred to holders of Allowed Class 4RR Claims and Allowed Class 4CB Claims making the Stock Election.  The remaining 78% of the Equity Interests in Cross Border held by Red Mountain will be transferred to the Plan Funder.  Any other Holders of Equity Interests in Class 7CB will retain their Equity Interests in Cross Border.

      [d]     *Class 7BR – Equity Interests in Black Rock.* All Equity Interests in Black Rock held by Red Mountain will be transferred to Cross Border.

## ARTICLE 5 : PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN

### 5.1 *Treatment of Administrative Claims.*

The holder of an Administrative Claim [including Fee Claims] incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, an application for the allowance of such Administrative Claim and, if applicable, a Fee Application within forty-five [45] days after the Confirmation Date.  Failure to file and serve these documents timely and properly shall result in the Administrative Claim being forever barred and discharged; provided, however, that the Reorganized Debtors may, but are not obligated to, pay any Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors or that is held by an Ad Valorem Taxing Authority even in the absence of the timely filing of such documents.  Each holder of an Administrative Claim against a Debtor which is ordered to be paid pursuant to a Final Order shall receive upon the date on which such orders becomes a Final Order [1] the amount of such holder's Allowed Administrative Claim in one Cash payment or [2] such other treatment as may be agreed upon in writing by the Reorganized Debtors and such holder. Administrative Claims.   Ad Valorem Taxing Authorities are not required to file an Administrative Expense claim or a request for payment in order for such Allowed Administrative Expense Claim to be entitled to payment.

### 5.2 *Treatment of Priority Tax Claims.*

Each holder of an Allowed Priority Tax Claim shall receive in full satisfaction of such holder's Allowed Priority Tax Claim a Cash payment in the amount of the Allowed Priority Tax Claim on or before the later of [i] the Effective Date, or [ii] ten [10] Business Days after the Priority Tax Claim is Allowed.

### 5.3 *Treatment of Intercompany Claims.*

No other distributions will be made on account of Intercompany Claims.

ARTICLE 6 : ACCEPTANCE OR REJECTION OF THE PLAN

**6.1**    *Classes Entitled to Vote.*

Classes 1CB, 1BR, 1RD, 1RR, 4RR, 4CB, 6CB, 6BR, and 6RD are entitled to vote.

**6.2**    *Cramdown.*

Should the Bankruptcy Court determine that one or more Classes of Claims is entitled to vote on the Plan, then if any such Class of Claims shall fail to accept the Plan in accordance with section 1126[c] of the Bankruptcy Code, the Debtors request confirmation of the Plan in accordance with section 1129[b] of the Bankruptcy Code.

ARTICLE 7 : MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1**    *Funding of Plan Distributions*

The Plan Funder will contribute $100,000 to the Plan.  Red Mountain, RMR, Cross Border and Black Rock will each will retain sufficient assets to make the payments called for by the Plan.

**7.2**    *Vesting of Assets and Retention of Causes of Action.*

On the Effective Date, all real and personal property of the estate of each of the Debtors, including but not limited to all causes of action of each Debtor and its estate (except for Cash in the amount needed to make the distributions called for by each Debtor under the Plan) shall vest in the Applicable Reorganized Debtor except for the assets of Red Mountain which shall vest in Cross Border.  Such vesting shall be subject to any Liens of holders of Allowed Secured Claims; provided that upon any subsequent conversion to a case under chapter 7, all assets vesting in a Reorganized Debtor, shall pass to the chapter 7 trustee as property of the chapter 7 estate subject to those Claims, Liens, and encumbrances as Allowed and restructured in this Plan and as specified herein.

Any and all claims, causes of action and enforceable rights of a Debtor against third parties, or assertable by the Debtors on behalf of their Creditors, their estates or themselves, whether brought in the Bankruptcy Court or any other forum, shall be retained by the applicable Reorganized Debtor pursuant to Bankruptcy Code Section 1123[b][3][B] (again, except for those of Red Mountain which shall vest in Cross Border).  Without limiting the foregoing, the Reorganized Debtors are specifically retaining claims against:

(1) third-parties (including but not limited to vendors to the Debtors) for obligations, transfers of property or interests in property, offsets, debt forgiveness, rebates, Cash, and other types or kinds of property or interests in property (or the value thereof), recoverable or avoidable pursuant to §§ 544, 545, 547, 548, 549, 550 and 553, Bankruptcy Code or any applicable law;

(2) third-parties for damages, general or exemplary (or both) or other relief, relating to or based upon (A) indebtedness owing to Debtors, (B) fraud, negligence, gross negligence, willful misconduct, or any other tort actions, (C) breaches of contract, (D) violations of federal or state securities laws, (E) violations of applicable corporate laws, (F) breaches of fiduciary or agency duties, (G) causes of action based on disregard of the corporate form or piercing the corporate veil or other liability theories;

(3) rights existing under applicable agreements between the Debtors and Black Shale;

(4) third-parties for damages or other relief based upon any other claim of Debtors to the extent not specifically compromised or released by Order of the Bankruptcy Court or pursuant to this Plan or an agreement referred to, or incorporated into, this Plan.

**7.3**   *Assumption of Liabilities.*

The liability for and obligations under the Plan shall be assumed by and become obligations of the Reorganized Debtors.

**7.4**   *Estimated Claims.*

Except as otherwise provided herein, the Court may estimate for purposes of allowance pursuant to § 502[c], Bankruptcy Code, [i] any Contested Claim or unliquidated Claim, or [ii] any portion or part of an Claim that is, itself, unliquidated.  Any Estimation Order, to the extent it becomes a Final Order, shall determine the amount of the Allowed Claim so estimated.

**7.5**   *Claims on File; No Allowance of Untimely Claims.*

The Debtors are relying on the formal proofs of Claims on file and the Debtors' Schedules currently on file in seeking confirmation of the Plan.   No informal proof of claim shall be deemed to have been filed in these Chapter 11 Cases.

**7.6**   *Officers and Directors.*

The managers, officers and directors of the Reorganized Debtors shall be those managers, officers and directors as of the Effective Date until other managers, officers or directors are designated pursuant to applicable non-bankruptcy law.

**7.7**   *Transfer of Cross Border Equity Interests.*

Pursuant to section 1145(a) of the Bankruptcy Code, the transfer of the Cross Border Equity Interests to the Plan Funder shall be exempt from the registration requirements of section 5 of the Securities Act and other applicable law under section 4(a)(2) of the Securities Act or another available exemption from registration under the Securities Act. The issuance and distribution of the such Equity Interests shall be exempt from the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration of an offer or sale of securities under section 1145(a) of the Bankruptcy Code.

### ARTICLE 8 : PROVISIONS GOVERNING DISTRIBUTIONS

**8.1** *Distributions.*

Except as otherwise provided in this Plan, any distributions and deliveries to be made under the Plan shall be made on the Effective Date, as funds are available, or as the Bankruptcy Court may order.

**8.2** *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders [or at the last known address of such a holder if no proof of Claim is filed or if the Debtors have been notified in writing of a change of address]. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtors are notified in writing of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. After the first anniversary of the Effective Date, all unclaimed property shall revert to the Reorganized Debtors or any successor thereto, and the Claim of any holder with respect to such property shall be discharged and forever barred.

**8.3** *Time Bar to Cash Payments.*

Checks issued by Reorganized Debtors in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Reorganized Debtors by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the later of [1] the first anniversary of the Effective Date or [2] 90 days after the date of reissuance of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred.

**8.4** *Withholding of Taxes.*

The Reorganized Debtors shall withhold from any assets and property distributed under this Plan any assets and or property which must be withheld for federal, state and local taxes payable by the Entity entitled to such property to the extent required by applicable law.

### ARTICLE 9 :
### PROCEDURES FOR RESOLVING AND TREATING
### CONTESTED CLAIMS UNDER THE PLAN

**9.1** *Objection Deadline.*

As soon as practicable, but in no event later than ninety [90] days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made. Notwithstanding the foregoing sentence, as to any Claim which is filed after the Effective Date, an objection to such Claim shall be filed on or before ninety [90] days after the date on which such Claim is filed.

### 9.2 *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to the disputed portion of any Claim to the extent it is a Contested Claim unless and until such Contested Claim becomes an Allowed Claim. Payments and distributions to each holder of a Contested Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of Claims to which the respective holder belongs.

### 9.3 *Contested Claims.*

[a]    Establishment of Contested Claims Reserve. Notwithstanding any other provision of this Plan, no assets or property shall be distributed under this Plan on account of any Contested Claim. For all Contested Claims, the Reorganized Debtors shall establish and hold, in trust, distributions to be made on account of any Claim [each such reserve being called a "Contested Claims Reserve"] which is a Contested Claim, and shall place in each Contested Claims Reserve the assets and property to be distributed on account of such Contested Claims pursuant to this Plan, pending Allowance or Disallowance of such Claim. Pending entry of a Final Order concerning a Contested Claim, the Reorganized Debtors shall pay into the Contested Claims Reserve all payments provided for under this Plan which would have been required to be delivered to the holder of the Contested Claim as if the Contested Claim were an Allowed Claim. Cash held in any Contested Claims Reserve shall be held in a segregated interest-bearing trust account. To the extent practicable, the Reorganized Debtors may invest the Cash in any Contested Claims Reserve in a manner that will yield a reasonable net return, taking into account the safety of the investment. Each Contested Claims Reserve shall be held in a federally-insured financial institution. No funds shall be released from a Contested Claims Reserve absent an order from the Bankruptcy Court.

[b]    Determination of Contested Claims Reserve. The Debtors shall establish and fund a Contested Claims Reserve in respect of each Contested Claim in an amount asserted by the holder of a Contested Claim in a filed proof of claim, or if no proof of claim is filed, the amount, if any, set forth in the Debtor's Schedules. Notwithstanding the foregoing, with respect to any Contested Claim, the Debtors may seek to establish a different amount of the Contested Claims Reserve applicable to such Contested Claim after notice and opportunity for a hearing to the holder of the Contested Claim. The Bankruptcy Court may, at any time, including upon request of a party in interest, determine for each Contested Claim, the amount of assets and property sufficient to fund each Contested Claims Reserve established with respect to any such Claim. Any unsecured claimant holding a Contested Claim so estimated will have recourse only to undistributed assets and property in the Contested Claims Reserve to satisfy the Contested Claim and not to the Reorganized Debtors or any other assets or property, should the Allowed Claim of such claimant, as finally determined by a Final Order, exceed such Estimated Amount.

[c]    Return of Assets. Except as otherwise provided herein, all assets and properties [and all interest payments and dividends previously paid in connection therewith] in any Contested Claims Reserve remaining after the resolution of all disputes relating thereto shall be returned to the Reorganized Debtors.

## ARTICLE 10:
## PROVISIONS GOVERNING EXECUTORY CONTRACTS AND

<b>UNEXPIRED LEASES UNDER THE PLAN</b>

### 10.1 *Assumption or Rejection of Contracts.*

The Plan constitutes a motion to assume, as of the Effective Date, all Contracts. Except as set forth in such motions or Orders of the Bankruptcy Court, as to assumed Contracts, [a] no cure of such Contracts pursuant to Bankruptcy Code section 365[b][1][A] is necessary other than the Cure Payments; [b] no Bankruptcy Code section 365[b][1][B] compensation is owing or shall be owing upon the assumption of such Contracts; [c] confirmation of this Plan shall be deemed [i] adequate assurance of prompt cure of any default under such Contracts solely based upon a Debtor's obligation in the Plan to make the Cure Payments, [ii] adequate assurance of future performance under such Contracts, and [iii] consent by the party to such Contract to the assignment or sublease of the property subject to the Contract to any third party disclosed at the Confirmation Hearing.

### 10.2 *Bar to Rejection Damages.*

If the rejection of a Contract by a Debtor results in damages to the other party or parties to such Contract, a Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against such Debtor, the Reorganized Debtors or their respective property or their agents, successors or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before sixty [60] days following the Effective Date.

### 10.3 *Insurance Policies.*

Notwithstanding anything in the Plan, all insurance policies under which a Debtor is the insured party shall be deemed assumed as of the Confirmation Date. All payments upon such policies are current; no cure payments are necessary.

### 10.4 *Effect on Royalty Interests and Oil & Gas Leases*

Nothing in the Plan shall affect, modify, or impair the rights of any holder of a royalty interest in the production of the assets of a Debtor, which is otherwise valid, perfected, unavoidable and enforceable in accordance with applicable law to receive royalty or other payments which become due on and after the Effective Date.

On the Effective Date, each Debtor's right, title and interest in and to all of such Debtor's oil & gas leases, shall revest in such Debtor as reorganized hereby on the terms and conditions set forth in the Plan. To the extent such oil & gas leases may be deemed to be, and treated as though they are, executory contracts, such leases shall be deemed assumed pursuant to the Plan and section 365 of the Bankruptcy Code consistent with Section 10.1 of the Plan.

<b>ARTICLE 11 : RETENTION OF JURISDICTION</b>

### 11.1 *Scope of Jurisdiction.*

Pursuant to sections 1334 and 157 of title 28 of the United States Code, until the time that an order is entered closing the Chapter 11 Cases, the Bankruptcy Court shall, to the extent legally permitted, retain and have jurisdiction over all matters arising in, arising under and related to the

Chapter 11 Cases and the Plan.  The Bankruptcy Court shall retain jurisdiction to the fullest extent allowed by applicable law, including but not limited to the following specific purposes:

[a]   to modify this Plan pursuant to the Bankruptcy Rules and the Bankruptcy Code;

[b]   to enforce and interpret the terms and conditions of this Plan;

[c]   to enter such orders, including injunctions, as are necessary to enforce the title, rights, and powers of the Reorganized Debtors;

[d]   to enter an order concluding and terminating the Chapter 11 Cases;

[e]   to correct any defect, cure any omission, or reconcile any inconsistency in this Plan, or the Confirmation Order as may be necessary, consistent with the requirements of the Bankruptcy Code and Bankruptcy Rules to carry out the purposes and intent of this Plan, including the adjustment of the date[s] of performance under this Plan in the event the Effective Date does not occur as provided herein, so that the intended effect of this Plan may be substantially realized thereby;

[f]   to allow or disallow all Unclassified Claims, including Fee Claims;

[g]   to hear and determine any causes of action arising prior to the Effective Date or thereafter or in any way related to this Plan or the transactions contemplated hereby;

[h]   to determine any and all applications pending on Confirmation for the rejection, assumption or assignment of Contracts and the allowance of any Claim resulting therefrom;

[i]   to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

[j]   to hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals;

[k]   to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

[l]   to hear and determine any timely objections to or applications concerning Claims or the allowance, disallowance, classification, priority, compromise, estimation, or payment of any Claim, or Equity Interest;

[m]   to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

[n]   to enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

[o]   to hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146, Bankruptcy Code;

[p]   to adjudicate claims retained by the Reorganized Debtors in accordance with the Plan, subject to referral to the District Court, if necessary;

[q]   to enter Estimation Orders;

[r]   to determine claims under 11 U.S.C. § 506[c] against the holders of any Allowed Secured Claim; and

[s]   to enter orders implementing, or declaring the rights of the parties to, the Sale.

### 11.2   *Failure of the Bankruptcy Court to Exercise Jurisdiction.*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to this Case, including the matters set forth in Section 11.1 of the Plan, this Article 11 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

ARTICLE 12 : MISCELLANEOUS PROVISIONS

### 12.1  *Setoff Rights.*

In the event that a Debtor has a claim of any nature whatsoever, including but not limited to a 11 U.S.C. 506[c] claim, against the holder of a Claim, then the Reorganized Debtor may, but is not required to, setoff against the Claim [and any payments or other distributions to be made in respect of such Claim hereunder], subject to the provisions of section 553 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by such Debtor/Reorganized Debtor of any claim that such Debtor/Reorganized Debtor may have against the holder of a Claim.

### 12.2  *Discharge.*

Entry  of the Confirmation Order shall discharge all existing debts and Claims of any kind, nature or description whatsoever against the Debtors or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code, including but not limited to Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date and all debts of the kind specified in sections 502[g], 502[h] or 502[i] of the Bankruptcy Code, whether or not [a] a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; [b] a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or [c] the holder of a Claim has accepted the Plan.  As provided in section 524 of the Bankruptcy Code, the discharge shall void any judgment against the Debtors or Reorganized Debtors at any time obtained to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against the Debtors, the Reorganized Debtors, or any of their property, to the extent it relates to a Claim discharged.  Notwithstanding anything to the contrary, this Section 12.2 does not enjoin creditors from enforcing their rights under the Plan and does not apply to post-petition ad valorem taxes.

### 12.3  *Injunctions.*

**EXCEPT AS PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, AS OF THE EFFECTIVE DATE, ALL ENTITIES THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM OR OTHER DEBT OR LIABILITY THAT IS DISCHARGED PURSUANT TO THE TERMS OF THE PLAN SHALL BE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH DISCHARGED CLAIM, DEBT OR LIABILITY:**

**(I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST ANY DEBTOR OR REORGANIZED DEBTOR, OR ANY OF ITS PROPERTY, OTHER THAN TO ENFORCE ANY RIGHT TO A DISTRIBUTION PURSUANT TO THE PLAN;**

**(II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY  DEBTOR OR REORGANIZED DEBTOR, OR ANY OF ITS PROPERTY, OTHER THAN AS PERMITTED PURSUANT TO (I) ABOVE;**

**(III) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST ANY DEBTOR OR REORGANIZED DEBTOR, OR ANY OF ITS PROPERTY;**

**(IV) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO ANY DEBTOR OR REORGANIZED DEBTOR; AND**

**(V) COMMENCING OR CONTINUING ANY ACTION, IN ANY MANNER, IN ANY PLACE THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN.**

**12.4** *Pre-Petition Date Lawsuits and Insurance.*

On the Effective Date, all pre-Petition Date lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a Claim shall be dismissed as to the Reorganized Debtors; provided however, if the appeal of any such matter is pending as of the Confirmation Date, the Claim shall be determined by the appellate court[s] in which such case is pending; provided further that if such case is reversed or remanded to the trial court, the Claim shall be asserted in the Chapter 11 Cases and finally determined by the Bankruptcy Court.

Dismissals of proceedings provided herein shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan. **ALL PARTIES TO ANY SUCH ACTION SHALL BE ENJOINED BY THE BANKRUPTCY COURT IN THE CONFIRMATION ORDER FROM TAKING ANY ACTION TO IMPEDE THE IMMEDIATE AND UNCONDITIONAL DISMISSAL OF SUCH ACTIONS.** Confirmation and consummation of the Plan shall have no effect on insurance policies of either of the Debtors in which either of the Debtors is or was the insured party; and the Reorganized Debtors shall become the insured party under any such policies. Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtors' bankruptcy, the Plan or any provision within the Plan, including the treatment or means of liquidation set out within the Plan.

**12.5** *De Minimis Distributions.*

No distribution of less than $25.00 shall be made to any holder of an Allowed Claim. Such undistributed amount will be retained by the Reorganized Debtors.

**12.6** *Payment of Statutory Fees.*

The Reorganized Debtors shall be responsible for the timely payment of fees incurred pursuant to 28 U.S.C. § 1930[a][6] until the clerk of the Bankruptcy Court closes the Chapter 11 Cases. The Reorganized Debtors shall file with the Court and serve upon the U.S. Trustee a quarterly financial report for each quarter [or portion thereof] that the case remains open in a format prescribed by the U.S. Trustee.

**12.7** *Post-Effective Date Fees and Expenses of Professional Persons.*

Except as provided in this Plan, after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay

the reasonable fees and expenses of the Professional Persons employed by the Reorganized Debtors, related to the implementation and consummation of the Plan, provided, however, that no such fees and expenses shall be paid except upon receipt by a Reorganized Debtor of a written invoice, which invoice shall also be served upon counsel for the Reorganized Debtors, and the United States Trustee, by the Professional Person seeking fees and expense reimbursement and provided, further, however, that a Reorganized Debtor may, within 10 days after receipt of an invoice for fees and expenses, request the Bankruptcy Court to determine any such request and the Bankruptcy Court shall have jurisdiction to do so.  In such event, the Bankruptcy Court shall apply the same standard for approval of fees and expenses as applied throughout these Chapter 11 Cases.

### 12.8    *Bankruptcy Restrictions.*

From and after the Effective Date, the Reorganized Debtors shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code [*e.g.*, section 363 or 364]. The Reorganized Debtors may conduct their affairs in such manner as is consistent with corporations not in bankruptcy without the need of seeking Bankruptcy Court approval.  No monthly operating reports will be filed after the Effective Date; however, the Reorganized Debtors shall provide the U.S. Trustee such financial reports as the U.S. Trustee may reasonably request until the entry of a final decree.

### 12.9    *Release of Liens Upon Payment.*

Upon the payment in full of any Allowed Secured Claim as provided under this Plan, with the exception of Allowed Claims of Ad Valorem Taxing Authorities, the holder of such Allowed Secured Claim shall execute, deliver and file a release of all liens and security interests securing its Allowed Secured Claim within twenty-one [21] days of such payment.

### 12.10    *Binding Effect.*

The Plan shall be binding upon and inure to the benefit of the Reorganized Debtors, the holders of Claims, the holders of Equity Interests, and their respective successors and assigns; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed [i] to constitute a waiver or release of any Claims by the Debtors, or any other Person, [ii] to prejudice in any manner the rights of the Debtors, or any other Person, or [iii] to constitute any admission by the Debtors, or any other Person.

### 12.11    *Governing Law.*

Unless a rule of law or procedure is supplied by federal law [including the Bankruptcy Code and Bankruptcy Rules], the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 Cases, except as may otherwise be provided in such agreements, documents and instruments.

### 12.12    *Modification of Plan.*

Modifications of the Plan may be proposed in writing by the Debtors at any time before the Confirmation Date, provided that [a] the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and [b] the Debtors shall have complied with section 1125 of the Bankruptcy Code.  The Plan may be modified at any time after the Confirmation Date and before substantial consummation by the Debtors/Reorganized Debtors, provided that [i] the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, [ii] the

Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code and [iii] the circumstances warrant such modifications. A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

### 12.13 *Creditor Defaults.*

Any act or omission by a creditor in contravention of a provision within this Plan shall be deemed an event of default under this Plan. In the event a Reorganized Debtor asserts that a holder of a Claim is in default under the Plan, such Reorganized Debtor must provide such holder of a Claim with written notice ["Notice to Creditor"] of such default via overnight mail or similar same-day or express delivery to the address of such holder as set forth on the proof[s] of Claim filed by such holder [or at the last known address of such a holder if no proof of Claim is filed or if such Reorganized Debtor has been notified in writing of a change of address]. If the default asserted in the Notice to Creditor remains uncured on the fifteenth [15th] day from the date on which such Notice to Creditor is sent, the Reorganized Debtor may pursue any rights or remedies it may have under applicable bankruptcy or non-bankruptcy law, whether state, federal or otherwise, including seeking to hold the defaulting party in contempt of the Confirmation Order. If such creditor is found to be in default under the Plan, then in addition all other remedies available to the Reorganized Debtors, such party may be ordered to pay the reasonable attorneys' fees and costs of the Reorganized Debtor in pursuing such matter, at the Bankruptcy Court's discretion. Furthermore, upon the finding of such a default by a creditor, the Bankruptcy Court may [a] designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Federal Rule of Civil Procedure 70 or [b] make such other order as may be equitable which does not materially alter the terms of the Plan as confirmed.

### 12.14 *Debtors' Default.*

Except as otherwise provided in this Plan, in the event that the holder of an Allowed Claim asserts that a default under the Plan has occurred, such creditor must provide the Reorganized Debtors with written notice ["Notice"] of such default to the following addresses: c/o Howard Marc Spector, 12770 Coit Road, Suite 1100, Dallas, TX 75251 and c/o Alan Barksdale, 14282 Gillis Rd., Farmers Branch, TX 75244, via certified mail, overnight mail or similar same-day or express receipted delivery. If the default asserted in the Notice remains uncured on the fifteenth [15th] day from the date on which such Notice is sent, the holder of such Allowed Claim may pursue any rights or remedies it may have under applicable non-bankruptcy law, whether state, federal or otherwise.

### 12.15 *Severability.*

SHOULD THE BANKRUPTCY COURT DETERMINE THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR TRANSACTION, THE DEBTORS MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 12.12 OF THE PLAN SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY CLAIM. SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT [1] LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR [2] REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

### 12.16 *Substantial Consummation/Closing the Case.*

Upon initiating payments or distributions on Allowed Claims required to be paid pursuant to Articles 4 and 5, the Plan shall be deemed substantially consummated. Upon motion by the Reorganized Debtors, the Chapter 11 Cases shall be closed and the Bankruptcy Court shall issue a final decree containing such provisions as may be equitable.

### 12.17  *Integration Clause.*

This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtors, creditors, and the parties-in-interest upon the matters herein.

### 12.18  *Exculpations.*

The Debtors, the Reorganized Debtors, and their respective directors, officers, employees, predecessors, successors, attorneys, accountants, financial advisors, appraisers, representatives and agents, acting in such capacity, shall neither have nor incur any liability to any Entity for any act taken or omitted to be taken in connection with, related to or arising out of the Reorganization Cases or the consideration, formulation, preparation, dissemination, confirmation, effectuation, implementation or consummation of the Plan or any transaction proposed in connection with the Debtors, the Chapter 11 Cases or any contract, instrument, release or other agreement or document entered into or delivered, or any other act taken or omitted to be taken, in connection therewith; provided, however that the foregoing provisions of this Section shall have no effect on: (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; or (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

### 12.19  *Compromise and Settlement.*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise of all Claims and controversies relating to the contractual, legal and subordination rights that a holder of an Allowed Claim or Interest may have against any Debtor, or any distribution to be made on account of such an Allowed Claim. Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the benefits provided under the Plan and as a mechanism to effect a fair distribution of value to the Debtors' constituencies, except as set forth in the Plan, the provisions of the Plan shall also constitute a good-faith compromise of all Claims and controversies by any Debtor against any other Debtor (including but not limited to Intercompany Claims). In each case, the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their estates and the holders of such Claims and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice or action, order or approval of the Bankruptcy Court, the Debtors may compromise and settle Claims against other Entities and after the Effective Date, such right shall pass to the Reorganized Debtors.

DATED:  June 22, 2018.

Respectfully submitted,

By:     _/s/ Howard Marc Spector_
        Howard Marc Spector
        TBA #00785023

SPECTOR & JOHNSON, PLLC
Banner Place, Suite 1100
12770 Coit Road
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380
EMAIL: hspector@spectorjohnson.com

COUNSEL FOR THE DEBTORS